IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DALE E. HENRY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No. 06-797 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

### I.   INTRODUCTION

Pending before the Court are cross-motions for summary judgment filed by Plaintiff Dale E. Henry and Defendant Michael J. Astrue, Commissioner of Social Security.[1]  Plaintiff seeks review of a final decision by the Commissioner denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*[2]  For the reasons discussed

---

[1]    Pursuant to Fed. R. Civ. P. 23(d)(1), Michael J. Astrue, who became Commissioner of Social Security on February 12, 2007, is substituted for Jo Anne B. Barnhart in this action; *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.")

[2]    To be granted a period of disability and receive disability insurance benefits, a claimant must show that he contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he was last insured.  42 U.S.C. § 423(a).   The parties do not dispute the ALJ's finding that Mr. Henry was insured through December 31, 2008.

below, Plaintiff's motion is granted to the extent he seeks remand for further consideration and Defendant's motion is denied.

## II.  **BACKGROUND**

### A.  Factual Background

Dale Henry worked for several years as a janitor and housekeeper despite the fact that he had been diagnosed with human immunodeficiency virus ("HIV") in April 1985.  (Certified Copy of Transcript of Proceedings before the Social Security Administration, Docket No. 4, "Tr.," at 112.)  Plaintiff was fired from his last job on December 12, 2003, because, as he stated at the hearing, "they said I couldn't keep up with the work."  (Tr. 285.)  In addition to chronic fatigue, he experiences depression and pain in his right hand, right leg, and neck.

### B.  Procedural Background

On March 18, 2004, Mr. Henry protectively filed for disability insurance benefits, claiming that he had become disabled as of the date he was fired.  (Tr. 48-50.)  His application was denied on July 20, 2004 (Tr. 27-30), after which Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ") on August 25, 2004 (Tr. 31-32.)

On October 21, 2005, a hearing was held before the Honorable Alma Deleon at which Plaintiff was represented by counsel.  Judge Deleon issued her decision on January 25, 2006, again denying benefits.  (Tr. 15-19.)  The Social Security Appeals Council declined to review the ALJ's decision on April 19, 2006, finding no

2

error of law or abuse of discretion and concluding the decision was based on substantial evidence to support the ALJ's findings. (Tr. 5-7.) Therefore, the January 25, 2006 opinion became the final decision of the Commissioner for purposes of review. 42 U.S.C. § 405(h); Rutherford v. Barnhart, 399 F.3d 546, 549-550 (3d Cir. 2005), citing Sims v. Apfel, 530 U.S. 103, 107 (2000). Plaintiff filed suit in this Court on June 15, 2006, seeking judicial review of the ALJ's decision.

C.  Jurisdiction

This Court has jurisdiction by virtue of 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g)) which provides that an individual may obtain judicial review of any final decision of the Commissioner by bringing a civil action in the district court of the United States for the judicial district in which the plaintiff resides.

III. STANDARD OF REVIEW

The scope of review by this Court is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389 (1971); Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999). Findings of fact by the Commissioner are considered conclusive if they are supported by "substantial evidence," a standard which has been described as requiring more than a "mere scintilla" of evidence,

3

that is, equivalent to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, id. at 401. "A single piece of evidence will not satisfy the substantiality test if the [ALJ] ignores, or fails to resolve a conflict, created by countervailing evidence." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983).

This Court does not undertake de novo review of the decision and does not re-weigh the evidence presented to the Commissioner. Schoengarth v. Barnhart, 416 F. Supp.2d 260, 265 (D. Del. 2006), citing Monsour Medical Center v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986) (the substantial evidence standard is deferential, including deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence.) If the decision is supported by substantial evidence, the Court must affirm the decision, even if the record contains evidence which would support a contrary conclusion. Panetis v. Barnhart, No. 03-3416, 2004 U.S. App. LEXIS 8159, *3 (3d Cir. Apr. 26, 2004), citing Simmonds v. Heckler, 807 F.2d 54, 58 (3rd Cir. 1986), and Sykes v. Apfel, 228 F.3d 259, 262 (3rd Cir. 2000).

## IV. LEGAL ANALYSIS

### A.   The ALJ's Determination

In determining whether a claimant is eligible for disability insurance benefits, the burden is on the claimant to show that he has a medically determinable physical or mental impairment (or combination of such impairments) which is so severe

he is unable to pursue substantial gainful employment[3] currently existing in the national economy. The impairment must be one which is expected to result in death or to have lasted or be expected to last for not less than twelve months. 42 U.S.C. § 1382c(a)(3)(C)(I); Morales v. Apfel, 225 F.3d 310, 315-316 (3d Cir. 2000). In the case of a chronic condition such as HIV, it is not enough to show the presence of the disease; rather the claimant must show that the severity of his condition is such that it precludes him from engaging in any substantial gainful activity. Alexander v. Shalala, 927 F.Supp. 785, 792 (D. N.J. 1995); Walker v. Barnhart, No. 05-2282, 2006 U.S. App. LEXIS 5719, *8 (3d Cir. Mar. 6, 2006).

To determine a claimant's rights to DIB,[4] the ALJ conducts a formal five-step evaluation:

(1) if the claimant is working or doing substantial gainful activity, he cannot be considered disabled;

(2) if the claimant does not suffer from a severe impairment or combination of impairments that significantly limits his ability to do basic work activity, he is not disabled;

(3) if the claimant does suffer from a severe impairment which meets or equals criteria for an impairment listed

---

[3] According to 20 C.F.R. § 404.1572, substantial employment is defined as "work activity that involves doing significant physical or mental activities. . . . Work may be substantial even if it is done on a part-time basis." "Gainful work activity" is the kind of work activity usually done for pay or profit.

[4] The same test is used to determine disability for purposes of receiving either DIB or supplemental security income benefits. Burns v. Barnhart, 312 F.3d 113, 119, n1 (3d Cir. 2002). Therefore, courts routinely consider case law developed under either type of benefits.

5

in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") and the condition has lasted or is expected to last continually for at least twelve months, the claimant is considered disabled;

(4)    if the claimant retains sufficient residual functional capacity ("RFC")[5] to perform his past relevant work, he is not disabled; and

(5)    if, taking into account the claimant's RFC, age, education, and past work experience, the claimant can perform other work that exists in the local, regional or national economy, he is not disabled.

20 C.F.R. § 404.1520(a)(4); see also Morales, 225 F.3d at 316.

In steps one, two, and four, the burden is on the claimant to present evidence to support his position that he is entitled to Social Security benefits, while in the fifth step the burden shifts to the Commissioner to show that the claimant is capable of performing work which is available in the national economy.[6] Sykes v. Apfel, 228 F.3d 259, 263 (3d Cir. 2000).

Following the prescribed analysis, Judge Deleon first concluded that Mr. Henry had not engaged in substantial gainful activity at any relevant time, i.e., from his alleged onset date through the date of her decision. (Tr. 15.) In resolving step two in Plaintiff's favor, the ALJ found that he suffered from

---

[5]    Briefly stated, residual functional capacity is the most a claimant can do despite her recognized limitations. Social Security Ruling 96-9 defines RFC as "the individual's maximum remaining ability to perform work on a regular and continuing basis, i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule."

[6]    Step three involves a conclusive presumption based on the listings, therefore, neither party bears the burden of proof at that stage. Sykes, 228 F.3d at 263, n2, citing Bowen v. Yuckert, 482 U.S. 137, 146-147 n5 (1987).

6

asymptomatic HIV infection and a mood disorder, both of which were "severe impairments" as that term is defined by the Social Security Administration ("SSA".)[7]   (Tr. 15.)

At step three, the ALJ concluded that neither of Plaintiff's impairments satisfied any of the criteria in the relevant Listings, i.e., Listing 14.08 (HIV infection) or Listing 12.04 (affective disorders.)   (Tr. 16.)   At step four, the ALJ concluded Mr. Henry had the residual functional capacity to perform a range of medium work[8] which did not require the ability to push and pull with his lower extremities but with the ability to perform all postural functions occasionally.   The range of medium work to which he was limited would also exclude jobs requiring complex decisions, the ability to follow detailed instructions, and exposure to heights. (Tr. 16.)   At this step, Judge Deleon also concluded that Mr. Henry could not perform his past relevant work as a housekeeper which the vocational expert ("VE") at the hearing, Ms. Alina Kurtanich,

---

[7]   See 20 C.F.R. §§ 404.1520(c), 404.1521(a), and 140.1521(b), stating that a physical impairment is severe only if it significantly limits the claimant's "ability to do basic work activities," i.e., "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling," as compared to "a slight abnormality" which has such a minimal effect that it would not be expected to interfere with the claimant's ability to work, regardless of his age, education, or work experience.   Yuckert, 482 U.S. at 149-151.   The claimant has the burden of showing that the impairment is severe.   Id. at 146, n5.

[8]   Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, it is assumed he or she can also do sedentary and light work.   20 C.F.R. § 404.1567(c).

7

described as heavy work as defined in the Dictionary of Occupational Titles ("DOT"), but as light work when performed as described by Mr. Henry.   Further relying on Ms. Kurtanich's testimony, the ALJ concluded that there were a number of jobs existing in the national economy which Plaintiff could perform, e.g., hospital cleaner, food service person, and laundry worker. (Tr. 18.)   Therefore, based on his status as a person "closely approaching advanced age"[9] as of his alleged onset date of December 12, 2003, with a high school education, the ability to communicate in English, a work history of unskilled occupations, no transferable work skills, the medical evidence of record, and the testimony of the VE, the ALJ determined at step five that Mr. Henry was not disabled and, consequently, not entitled to benefits.   (Tr. 18.)

## B.   Plaintiff's Arguments

Plaintiff raises four arguments in the brief in support of his motion for summary judgment:   first, the ALJ failed to give the appropriate weight to the opinions of his treating physicians as to the effect of chronic fatigue on his ability to perform substantial gainful employment; second, the ALJ erred by finding that he had the RFC for medium work; third, the ALJ erred by finding that Plaintiff's activities of daily living supported the

---

[9]   Plaintiff was 53 years old at his alleged onset date, making him a person "closely approaching advanced age" according to Social Security regulations.   20 C.F.R. § 404.1563(d).

8

conclusion he was capable of substantial gainful activity; and finally, the ALJ's conclusion that Mr. Henry's testimony was not entirely credible was not supported by substantial evidence.

We need not address the last three arguments in detail because we conclude (1) the ALJ's failure to explain the relative weights given to the medical reports of Plaintiff's long-term treating physicians and those of a one-time state examiner, coupled with (2) the failure to explain how she resolved the conflict between the state examiner's opinion and that of his physician as to Plaintiff's RFC, are more than sufficient reason to remand this matter to the Commissioner for clarification.

      1. *The ALJ's failure to properly weigh all of the medical evidence of record:* Plaintiff argues that despite correctly setting out the law regarding the weight which is to be given to the opinions of medical providers, the ALJ failed to properly apply the law to the facts of his case. (Plaintiff's Brief in Support of a Motion for Summary Judgment, Doc. No. 7, "Plf.'s Brief," at 10-11.) The medical record shows that Plaintiff had consulted three physicians since he was diagnosed as HIV positive. Dr. James W. Boyle was his primary care physician ("PCP") from April 2, 2003, to December 2, 2003 (Tr. 112-115), after which Dr. Brian K. Bonner was his PCP from July 7, 2004 through at least September 6, 2005 (Tr. 241-275.) Dr. David Piontkowsky was an HIV specialist with whom he began consulting in

September 2004 at Dr. Bonner's suggestion.[10]  (Tr. 157-240.)  In the office notes of all those physicians, particularly those of Dr. Piontkowsky, there are repeated references to Mr. Henry's increasing fatigue, tiredness, and lack of motivation. (Plf.'s Brief at 11.)

We begin by recognizing that fatigue is a subjective complaint.  Social Security regulations clearly describe how the ALJ is to weigh a claimant's subjective complaints of pain, fatigue, shortness of breath, weakness, or nervousness and assess the claimant's credibility with regard to those complaints.  See Social Security Ruling ("SSR") 96-7p, "Evaluation of Systems in Disability Claims: Assessing the Credibility of an Individual's Statements."[11]  In brief, a claimant's description of his physical or mental symptoms is not sufficient in itself to establish disability.  Rather, the ALJ must first ascertain if there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the pain or other

---

[10]  Plaintiff contends that Dr. Piontkowsky began treating him in September 1999, but while there are laboratory reports in the records from Positive Health Clinic dating back to that period, Dr. Piontkowsky's "initial evaluation" took place on September 22, 2004. (Tr. 164, 207, 219.)

[11]  "Social Security Rulings are agency rulings published 'under the authority of the Commissioner of Social Security' and 'are binding on all components of the Social Security Administration.'"  Sykes, 228 F.3d at 271, citing 20 C.F.R. § 402.35(b)(1).  "Rulings do not have the force and effect of the law or regulations but are to be relied upon as precedents in determining other cases where the facts are basically the same."  Sykes, id., quoting Heckler v. Edwards, 465 U.S. 870, 873 n3 (1984).

symptoms. Once such a medically determined condition is identified, the ALJ must evaluate the intensity, persistence, and effects of the claimed symptoms to determine the extent to which they limit the individual's ability to do basic work activities. In this second step, the ALJ must determine the credibility of the claimant's statements based on consideration of the entire record, including medical signs and laboratory findings, the claimant's statements, and information provided by medical sources or other persons regarding the symptoms and how they affect the individual. SSR 96-7p, 20 C.F.R. § 404.1529(c)(4). The regulations further note that an individual's symptoms "can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone." 20 C.F.R. § 404.1529(c). In those circumstances, the ALJ must also consider the claimant's daily activities; the location, duration, frequency and intensity of pain or other subjective symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness and side effects of medication(s) the individual takes to alleviate the symptoms; treatment other than medication received to relieve pain, and any other factors concerning the individual's functional limitations and restrictions due to the symptoms. Id.

Listing 14.08N, one of the numerous sub-sets of the HIV Listing, refers to

    repeated. . .manifestations of HIV infection (including
    those listed in 14.08A-M, but without the requisite
    findings. . .) resulting in significant, documented

11

symptoms or signs (e.g., fatigue, fever, malaise, weight loss, pain, night sweats) and one of the following at the marked level. . .: 1. Restriction of activities of daily living; or 2. Difficulties in maintaining social functioning; or 3. Difficulties in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

Listing 14.08N.

Plaintiff does not argue that the ALJ erred by concluding he did not satisfy Listing 14.08N and the Court refers to this Listing only by way of noting that the SSA recognizes subjective symptoms such as pain, fatigue and malaise as clearly associated with HIV infections.  However, based on this recognition, we conclude that the ALJ erred by failing to consider in more than a perfunctory manner Plaintiff's well-documented subjective symptoms.

In her analysis, the ALJ noted that Mr. Henry had been treated at Positive Health Clinic ("PHC"), the facility which employed Dr. Piontkowsky, since 1999.  There, Plaintiff received periodic blood tests to determine his viral load and CD4 count, medication and recommendations for support groups. (Tr. 15.)  She noted records from PHC indicating that "his blood work has shown no increase in his viral load or decrease in the CD4 count to explain his complaints of increased fatigue and diminished appetite."  (Tr. 16.)  Judge Deleon also mentioned Dr. Boyle, Mr. Henry's primary care physician, who treated him for intermittent complaints of "increased need for sleep, decreased appetite, irritability and

sadness, along with depressed mood."[12]  (Id.)  She referred to Plaintiff's allegations of "fatigue, dizziness and pain in his right leg, along with depression, although he stated his HIV is under control."  (Id.)  She also commented that "it is possible that the fatigue and appetite disturbance are a symptom of his mental impairment rather than his physical impairment." (Tr. 16.)

The Court has carefully considered the medical records of Plaintiff's three physicians.  Dr. Boyle's notes cover only a few months and we can find no reference to reports of fatigue therein,[13] although there are repeated references to depression. (See, e.g., Tr. 112, 113, 114.)  We also note that his records date from a period before Mr. Henry was fired, i.e., presumably before his fatigue reached the point he was not able to keep up with his work.

On September 6, 2005, Mr. Henry's subsequent PCP completed a "Medical Assessment of Ability to Do Work-Related Activities (Physical)." (Tr. 271-275.)  In that report, Dr. Bonner noted:

--  a diagnosis of fatigue some two or three years prior;

---

[12]  Because Plaintiff does not dispute any part of the ALJ's analysis regarding the severity or effects of his depression or HIV positive status per se, the Court will not review in detail the medical records regarding these two conditions.  We do find one anomaly in Judge Deleon's report, however, which merits mention.  She stated that Dr. Boyle described moderate difficulties in Plaintiff's concentration, persistence or pace.  (Tr. 15.)  The Court can find no such report anywhere in Dr. Boyle's office notes, nor in the notes of his other two physicians.  (See Tr. 112-115 and Tr. 157-275.)

[13]  The Court finds Dr. Boyle's notes highly illegible so it may be that the ALJ's reference to his comments about increased need for sleep, decreased appetite, irritability and sadness are there, but not obvious to a reader unfamiliar with his handwriting.

- -- hand pain diagnosed two years prior;

- -- "Has had HIV 21 years; controlled with medication but now has difficulty holding things due to hand pain and has significant fatigue;"

- -- his ability to lift and carry is limited to 10 pounds occasionally, 5 pounds frequently, due to complaints "of pain and weakness in hands with sustained gripping;"

- -- his ability to walk and stand is limited to 3-4 hours total in an 8-hour day and to 2-3 hours without interruption due to complaints of leg pain with walking;

- -- his ability to sit is not affected;

- -- he can never climb and can only occasionally kneel, crouch, stoop, balance or crawl, again because of leg, hand, and neck pain associated with such activities;

- -- his ability to handle, reach, push and pull is limited due to pain  in his hands and neck; and

- -- he should never be exposed to fumes, chemicals, dust, temperature extremes, or humidity because the first four cause him to cough and he becomes nauseated with humidity.

(Tr. 271-275.)

Plaintiff consulted with Dr. Bonner every two or three months for more than a year.  (Tr. 293.)  The physician's statements above are supported by his contemporaneous office notes.  For example, reports of neck, hand and back pain appear in Dr. Bonner's notes dated October 10, and November 2, 2004, as well as January 27, and March 3, 2005.  (Tr. 249, 252, 255 and 254, respectively.)  He also noted depression, fatigue and sleeping disturbances on January 27,

and March 3, 2005, for which Mr. Henry was prescribed Effexor[14] and
had blood tests to check his thyroid and testosterone levels. (Tr.
254-255; *see also* illegibly dated note at Tr. 256, "Depression
about the same, but can talk to people about it more since on
Effexor. But still doesn't feel like doing anything.")

Dr. Piontkowsky, the HIV specialist, also noted repeated
complaints of pain, fatigue and depression. For instance, at the
initial evaluation on September 22, 2004, the nurse taking Mr.
Henry's medical, family, and social history noted he had been fired
"because he 'couldn't keep up' (fatigue)." (Tr. 219.) She also
noted "complaints of severe fatigue," that he was "tired all the
time," and experienced sleep disturbances which resulted in
decreased activity; he became easily fatigued "with minimum amount
of work." Physically, she noted complaints of pain in hands, feet,
and neck, along with throbbing and tingling pain in his right leg,
especially at night, which kept him awake. He reported a long
history of dizziness and nausea as a result of changing positions
rapidly or upon exertion. (*See* Tr. 219, 220, 221, 233.)

On December 21, 2004, Dr. Piontkowsky's notes indicate

history of fatigue, weight loss, lipodystrophy. . . . He

_____

[14]   Effexor (venlafaxine) is used to treat depression and, in its
extended-use form, to treat generalized anxiety disorder, social
anxiety disorder, and panic disorder. Venlafaxine is in a class of
medications called selective serotonin and norepinephrine re-uptake
inhibitors which work by increasing the amounts of natural substances
in the brain that help maintain mental balance. *See* the National
Institute of Medicine's on-line website, Medline Plus, at
www.nlm.nih.gov/medlineplus/druginfo (last visited May 7, 2007.)

15

does have some joint pain in both hands and his right hip. He also has pain in both feet. . . .Depression – feels like the medications may not be fully effective. . . . [Questionable] peripheral neuropathy.[15] The Zerit[16] may be causing this pain. . . . He also reports waking up with a sense of being tired and not quite himself. . . .

(Tr. 216.)

On February 23, 2005, Dr. Piontkowsky reported to Dr. Bonner that Mr. Henry "continues to have a fairly high level of fatigue which manifests as tiredness, weakness and lack of motivation which is especially difficult in the morning." He also reported that same date that Plaintiff's arm and leg pain were much improved after his medications were changed in December 2004. (See Tr. 216.) Although his depression was somewhat better, he was still depressed and on the maximum dose of Effexor XR. (Tr. 207-209.)[17]

---

[15] Neuropathy is defined as an abnormal and usually degenerative state of the nervous system of nerves and also a systemic condition (as muscular atrophy) stemming from a neuropathy. See dictionary at www.nlm.nih.gov/medlineplus (last visited May 7, 2007.)

[16] Zerit (stavudine) is with other antiviral medications to treat HIV and/or acquired immunodeficiency syndrome (AIDS). Stavudine is one of a class of medications called nucleoside analogue reverse transcriptase inhibitors which work by slowing the spread of HIV in the body. See www.nlm.nih.gov/medlineplus/druginfo (last visited May 7, 2007.)

[17] Another document in Dr. Piontkowsky's records is rather ambiguous. In an undated report from sometime after August 31, 2005, Dr. Piontkowsky responded to a request from the SSA to provide medical records. On the first page of the report, he described Mr. Henry's history and clinical course as "HIV disease with increasing fatigue, depression." (Tr. 159.) His prognosis was described as "fatigue – guarded. HIV – controlled & stable but progressive." (Id.) The next document in the file is a "Medical Assessment of Ability to Do Work-Related Activities (Physical)" (Tr. 160), comparable to that completed by Dr. Bonner. Across the face of the first page of the form is a hand-written note, "DO NOT PERFORM THIS EXAM." Defendant argues that although requested to do so by the Commissioner, Dr. Piontkowsky did not identify any limitations caused by Plaintiff's HIV, fatigue or

16

The ALJ refers to these limitations – particularly the reports of chronic fatigue – only in passing.  Instead, in the paragraph regarding opinion evidence, she relied on the report of a one-time examiner, Lawrence F. Rahall, D.O., who examined Mr. Henry on June 17, 2004.  (Tr. 17; see also Tr. 141-146.)  Dr. Rahall noted Mr. Henry's symptoms of "being nauseous all the time, tired, and depressed. . . .limited physical activity due to generalized fatigue;" a self-report that he could lift up to 50 pounds; the ability to "stand for about a half-hour to 45 minutes at a time;" and fatigue associated with "going up and down stairs." (Tr. 141.) He also noted pain in Plaintiff's "right hand which he has had for about three years" and which "makes it difficult for him to do his normal custodial activity."  His medical history was positive for right thumb pain, left index finger pain, generalized neck discomfort, toe discomfort and general "aching all over."  (Tr. 143.)  Dr. Rahall consequently concluded that Mr. Henry was capable of lifting and carrying 50 pounds on occasion; had no limitation in standing and walking for half an hour at a time; could sit indefinitely; was limited in pushing and pulling due to generalized fatigue; could occasionally perform all postural activities; had no

---

depression.  (Defendant's Brief in Support of Her Motion for Summary Judgment, Doc. No. 9, at 6 and 12.)  The Court finds it unclear if Dr. Piontkowsky declined to complete the form or if he were directed not to do so.  It seems grammatically logical that if he chose not to perform the exam and report his results, he would have written "DID NOT PERFORM THIS EXAM."  On the other hand, if the SSA directed him not to perform the exam, the phrase "DO NOT. . ." would have been used.  If necessary, this point should be clarified on remand.

limitations in his other functional activities including reaching, handling, fingering and feeling; and his only environmental limitation was to avoid working at heights due to right hip pain and generalized fatigue.  (Tr. 145-146.)

Social Security regulations identify three general categories of acceptable medical sources: treating, non-treating, and non-examining.  20 C.F.R. § 404.1502.  Physicians, psychologists and other acceptable medical sources who have provided the claimant with medical treatment or evaluation and who have had an "ongoing treatment relationship" with him are considered treating sources. A non-treating source is one who has examined the claimant but does not have an ongoing treatment relationship with him, for example, a one-time consultative examiner.  Id.  Finally, non-examining sources, including state agency medical consultants, are those whose assessments are premised solely on a review of medical records.  Id.

The Social Security regulations also carefully set out the manner in which medical opinions are to be evaluated.  20 C.F.R. § 404.1527.  In general, every medical opinion received is considered.  Unless a treating physician's opinion is given "controlling weight," the ALJ will consider (1) the examining relationship (more weight given to the opinion of an examining source than to the opinion of a non-examining source); (2) the treatment relationship (more weight given to opinions of treating sources); (3) the length of the treatment relationship and the

18

frequency of examination (more weight given to the opinion of a treating source who has treated the claimant for a long time on a frequent basis); and (4) the nature and extent of the treatment relationship (more weight given to the opinions of specialist than to generalist treating sources.)  20 C.F.R. § 404.1527; see also Fargnoli v. Halter, 247 F.3d 34, 43 (3d Cir. 2000), and Sykes, 228 F.3d at 266 n.7.

Here, the ALJ failed to refer in any depth to the medical assessment of Dr. Bonner, Plaintiff's long-term treating physician, or to the medical notes of Dr. Piontkowsky, the HIV specialist. Those reports clearly contradict Dr. Rahall's opinions on which the ALJ obviously relied.  The opinions of Drs. Bonner and Piontkowsky are to be given "controlling weight" on questions of the nature and severity of Plaintiff's impairments if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] record."  20 C.F.R. § 404.1527(d); see also Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)("An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided.")  Thus, their opinions should have been given at least significant, if not controlling, weight.

The Third Circuit Court of Appeals has held that although an ALJ is not required to mention every item in the medical record,

"where there is conflicting probative evidence in the record, we recognize a particularly acute need for an explanation of the reasoning behind the ALJ's conclusions, and will vacate or remand a case where such an explanation is not provided." Fargnoli, 247 F.3d at 42; see also Landeta v. Comm'r of Soc. Sec., No. 05-3506, 2006 U.S. App. LEXIS 20905, *14 (3d Cir. Aug. 14, 2006) (case law requires that the ALJ state the evidence considered which supports the result reached and indicate any evidence which was rejected.) While an ALJ is not required "to use particular language or adhere to a particular format in conducting his analysis," the explanations of his findings must be such that when "read as a whole," the Court is able to perform a "meaningful judicial review." Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004).

Here, the ALJ failed to discuss in any depth Plaintiff's pain, fatigue, and malaise which are recognized as "significant, documented symptoms or signs" associated with HIV. Moreover, she failed to explain why she chose to accept Dr. Rahall's opinions regarding Plaintiff's ability to do work-related activities rather than the much more restrictive conclusions set out by Dr. Bonner in a comparable report. Therefore the Court is unsure if the ALJ rejected the medical opinions of Drs. Bonner and Piontkowsky or if she improperly gave greater weight to the opinion of a one-time examining physician than to those of Plaintiff's long-term treating physicians. This matter must therefore be remanded for clarification of those issues.

2.    *Other Questions:*  Because the ALJ clearly relied on

Dr. Rahall's opinion of Plaintiff's RFC, it may be that the

hypothetical question posed to the VE was also defective.    For

instance, despite repeated notes of Plaintiff's hand pain, Dr.

Rahall found no limitations in fingering or handling, apparently

leading the ALJ to omit such restrictions from her hypothetical

question.    According to the DOT, all the jobs identified by the VE

require the worker to perform a number of activities with his/her

hands.    *See* www.occupationalinfo.org, descriptions for cleaner,

hospital, code 323.687-010; food-service worker, hospital, code

319.677-014; and laundry worker I, code 361.684.014 (last visited

May 7, 2007.)[18]    On remand, the hypothetical question should

incorporate all the limitations supported by the medical record.

Burns, 312 F.3d at 123 (although an AlJ need not accept as

objective evidence a claimant's personal description of symptoms,

a hypothetical question posed to a vocational expert must include

all of a claimant's impairments that are supported by "medically

undisputed evidence in the record.")

Similarly, the ALJ's decision at the third step of the

analysis that Plaintiff was capable of performing work at the

medium exertional level appears to be based on Dr. Rahall's

---

[18]    We also note for the record that at least one of the jobs
recommended by the VE, hospital food-service worker, requires
reasoning capability at the R3 level, while the hypothetical question
precluded any positions involving detailed instructions, i.e., those
above the R1 or R2 levels.    If additional VE testimony is required on
remand, this point may need to be re-addressed.

conclusions and those of a non-examining state-agency physician, Dr. K. Loc Le on July 14, 2004.  (Tr. 147-154.)  As such, the latter could not have considered Dr. Bonner's opinions dated September 6, 2005. On remand, the ALJ should address the question of why she relied on the opinions of Drs. Rahall and Le regarding Plaintiff's exertional level rather than that of Dr. Bonner which suggests a maximum of sedentary work with a number of postural and environmental limitations.

We conclude that the underlying omissions in the analysis of the medical evidence makes it impossible to determine whether the hypothetical question or the RFC determination were accurate. Therefore, we reach no decision as to whether the ALJ's conclusions on these two issues were supported by substantial evidence.

Plaintiff's motion for summary judgment is granted insofar as he seeks remand for further consideration by the Commissioner.  An appropriate Order follows.

May ___7___, 2007

_William J. Standish_
William L. Standish
United States District Judge

cc:  Counsel of Record

22